IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JULIAN SANDOVAL-FLORES,<br><br>Petitioner,<br><br>vs.<br><br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Civil Case No. 2:16-cv-719-TC<br><br>(Associated Criminal Case<br>No. 2:99-cr-109-TC) |

Julian Sandoval-Flores has filed a motion under 28 U.S.C. § 2255 challenging his 2001 conviction and sentence under 18 U.S.C. § 924(c), which punishes "any person who, during and in relation to any crime of violence … uses or carries a firearm."  18 U.S.C. § 924(c)(1)(A).  The underlying predicate crime for his § 924(c) conviction (the "crime of violence") was attempted murder.  He contends that the court relied on an unconstitutional statutory provision—the "residual clause" in § 924(c)(3)(B)—to find that attempted murder was a "crime of violence," and, accordingly, his conviction is constitutionally invalid.  The Government raises numerous points, including the argument that the "elements clause" in § 924(c)(3)(A) provides an alternative and valid basis for his conviction.  For the reasons set forth below, the court agrees with the Government and denies the Motion.

1

## PROCEDURAL BACKGROUND

In 2000, a federal grand jury charged Mr. Sandoval-Flores with four counts of attempted murder, in violation of 18 U.S.C. § 1114(3), four counts of using a firearm during and in relation to the attempted murders, in violation of 18 U.S.C. § 924(c), and one count of being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5).  (Superseding Indictment, ECF No. 69 in 2:99-cr-109-TC (D. Utah).)  The attempted murder counts alleged that Mr. Sandoval-Flores "attempt[ed] to kill, with malice aforethought," FBI Special Agent Travis Thiede, as well as law enforcement officers assisting Special Agent Thiede.

On July 19, 2000, he pleaded guilty to two of the attempted murder charges, the 924(c) charge relating to the attempted murder of Utah Department of Corrections Officer Larry Benzon, and the charge of illegal alien in possession of a firearm.  (Statement in Advance of Plea, ECF No. 174 in 2:99-cr-109-TC.)  During the plea proceedings, he admitted that he opened fire on four members of the FBI Violent Crimes Task Force when they were attempting to execute an arrest warrant for a bank robbery suspect at a Salt Lake City residence.  Mr. Sandoval-Flores, who was protecting drugs and cash stored at the house, also admitted that he attempted to kill both Special Agent Thiede and Officer Benzon.  He shot Officer Benzon in the chest and in the head, but Officer Benzon's protective gear prevented serious physical injury.  In his plea agreement, Mr. Sandoval-Flores "knowingly, voluntarily and expressly waive[d] his right to challenge [his] conviction and/or sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under Title 28, United States Code, Section 2255[.]"  (Id. at 5, ¶ 11.B.)

In 2001, the court sentenced him to 450 months of imprisonment (later reduced to 385 months under 18 U.S.C. § 3582).  He did not appeal his sentence or conviction.  He did, however, file two unsuccessful § 2255 petitions in 2002 and 2003.

After the Supreme Court invalidated § 924(c)'s residual clause in <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), he filed the § 2255 motion now before the court.  In February 2020, the Tenth Circuit issued a certificate of appealability (COA) permitting him to file the successive petition, because he bases his claim on <u>Davis</u>, which announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  The appellate court cautioned, however, that its approval did not "consider the existence or applicability of any plea-agreement waiver that may have been executed."  (Feb. 6, 2020 Order of Tenth Circuit Court of Appeals at 2, n.1 (Case No. 16-4064), ECF No. 4.)  The Government, noting that caveat, now urges dismissal based on Mr. Sandoval-Flores's plea agreement waiver.

In October, the court heard argument from the parties on that issue as well as the Government's other grounds for dismissal.  As explained below, the court concludes that waiver precludes Mr. Sandoval-Flores's § 2255 motion.  Nevertheless, given some uncertainty in Tenth Circuit law, the court addresses the remaining points raised by the Government and holds in the alternative that any error that may have occurred was harmless because attempted murder is a crime of violence under § 924(c)'s elements clause.  Accordingly, Mr. Sandoval-Flores is not entitled to habeas relief.

## <u>ANALYSIS</u>

The United States opposes Mr. Sandoval-Flores's motion on numerous grounds, asserting that: (1) Mr. Sandoval-Flores waived his right to collaterally attack his sentence and conviction;

(2) he has not satisfied his burden under § 2255(h)'s gatekeeping requirement to show that the court relied on the unconstitutional residual clause; (3) even if the court relied on the residual clause, the error was harmless because attempted murder is a crime of violence under the alternative and still-valid elements clause in § 924(c)(3)(A) (defining "crime of violence"); and (4) he procedurally defaulted his claim.

## 1. <u>Procedural Default</u>

The United States contends that Mr. Sandoval-Flores procedurally defaulted his claim by failing to raise it on direct appeal.  <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) (failure to appeal issue results in procedural default).  Although the United States is correct, Mr. Sandoval-Flores has overcome that default by showing cause and actual prejudice.  <u>See, e.g.</u>, <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003) (cause and actual prejudice are exception to procedural default rule).

Cause exists when a claim "'is so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the direct appeal." <u>United States v. Snyder</u>, 871 F.3d 1122, 1127 (10th Cir. 2017) (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)).  If the argument on appeal would require the Supreme Court to explicitly overrule its precedent, the claim is novel.  <u>Id.</u>  In particular, if the defendant's claim is based on a Supreme Court decision announcing "'a constitutional principle that had not been previously recognized but which is held to have retroactive application,'" such as occurred in <u>United States v. Johnson</u>, 578 U.S. 120 (2016), and its progeny (including <u>Davis</u>), he has established novelty.  <u>Id.</u> (quoting <u>Reed</u>, 468 U.S. at 17).  The <u>Davis</u> decision announced just such a principle when it invalidated the residual clause eighteen years after the court sentenced Mr. Sandoval-Flores.  Accordingly, a claim based on <u>Davis</u> was not reasonably available in 2001.  <u>See id.</u> ("'[I]t is fair to say that no one—the

4

government, the judge, or the [defendant]—could reasonably have anticipated <u>Johnson</u>.'")

(quoting <u>United States v. Redrick</u>, 841 F.3d 478, 480 (D.C. Cir. 2016)).

As for actual prejudice, Mr. Sandoval-Flores has shown that the claimed error "is an

'error of constitutional dimensions' that worked to his actual and substantial disadvantage.'" <u>Id.</u>

at 1128 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  "A sentence that is not

authorized by law is certainly an 'actual and substantial disadvantage' of 'constitutional

dimensions.'" <u>Id.</u> (quoting <u>Frady</u>, 456 U.S. at 170).  If the court erred by basing Mr. Sandoval-

Flores's conviction and sentence on the unconstitutional residual clause, he most certainly

suffered prejudice by being convicted for an act that the statute unconstitutionally criminalized.

Mr. Sandoval-Flores's procedural default is excused.

**2.   <u>Waiver</u>**

The United States, noting that the COA does not preclude enforcement of the plea

agreement waiver, contends that Mr. Sandoval-Flores waived his right to challenge his

conviction and sentence in a § 2255 motion.  The court must enforce a plea agreement waiver if

(i) the issue raised in the collateral attack falls within the scope of the waiver, (ii) the waiver was

knowing and voluntary, and (iii) enforcement of the waiver would not result in a miscarriage of

justice.  <u>United States v. Hahn</u>, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc); <u>United States v.</u>

<u>Cockerham</u>, 237 F.3d 1179, 1183 (10th Cir. 2001).

Mr. Sandoval-Flores, who bears the burden here,[1] asserts that enforcing his waiver would

be a miscarriage of justice.  Waiver occurs in only one of four situations: "[1] where the district

court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel

in connection with the negotiation of the waiver renders the waiver invalid, [3] where the

---

[1] <u>United States v. Holzer</u>, 32 F.4th 875, 887 (10th Cir. 2022).

sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful," meaning "the error seriously affected the fairness, integrity or public reputation of the judicial proceedings," as the United States Supreme Court applied that test in United States v. Olano, 507 U.S. 725, 732 (1993) (addressing plain error analysis on appeal).  Hahn, 359 F.3d at 1327 (cleaned up).

Mr. Sandoval-Flores focuses on the "otherwise unlawful" exception.  When the court analyzes a waiver under that exception, the court does not look at whether the sentence was unlawful but rather asks "whether the waiver itself is unlawful because of some procedural error or because no waiver is possible."  United States v. Sandoval, 477 F.3d 1204, 1208 (10th Cir. 2007).  Mr. Sandoval-Flores argues that no waiver is possible because Davis invalidated his conviction: "While the law permits broad waivers, even waivers of unforeseen or unknowable eventualities, the law does not permit 'unlawful' waivers.  A waiver is unlawful if it attempts to waive a claim or issue that is not possible to waive."  (Reply in Support of the Amended § 2255 at 2, ECF No. 17 (emphasis added).)  To him, the waiver, as the United States is using it, would improperly shield an otherwise impermissible situation: continuing Mr. Sandoval's punishment under § 924(c) even though he "is not eligible for punishment under § 924(c)."  (Id.)  In other words, he asserts it is "not possible to waive" a challenge to an "illegal punishment" based on an unconstitutional statute.  (Id.)  But he does not cite to any case law to support the proposition.

Indeed, given Tenth Circuit precedent narrowly interpreting the Hahn "otherwise unlawful" exception, Mr. Sandoval-Flores has an uphill battle.  To begin, he conflates his waiver with the result of his sentencing proceeding, a position that conflicts with the Tenth Circuit's express and repeated admonition to distinguish the two.  The court's analysis must focus on "the lawfulness of the waiver itself," not the claimed sentencing error.  See, e.g., United States v.

Holzer, 32 F.4th 875, 887 (10th Cir. 2022) ("We have previously rejected, albeit in an unpublished decision, the assertion that the occurrence of constitutional errors during sentencing is sufficient to establish that the waiver itself was unlawful, and we reaffirm that conclusion here.") (citing United States v. Bartholomew, 608 F. App'x 668, 669 (10th Cir. 2015)); United States v. Frazier-LeFear, 665 F. App'x 727, 730 (10th Cir. 2016) ("otherwise unlawful" exception is "inapplicable to errors distinct from the waiver itself, obviating consideration of whether such errors met the Olano standard for error that seriously affects the fairness, integrity or public reputation of judicial proceedings"); United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007) (holding that the "otherwise unlawful" exception "looks to whether the *waiver* is otherwise unlawful, not to whether another aspect of the sentencing proceeding may have involved legal error") (emphasis in original) (internal citation and quotation marks omitted); Sandoval, 477 F.3d at 1208 ("Our inquiry is not whether the sentence is unlawful, but whether the waiver itself is unlawful").

Moreover, even if a newly announced decision invalidated a statute for constitutional reasons and would preclude conviction now, such a post-plea change in the law does not make the waiver otherwise unlawful.  "Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later judicial determinations."  United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005) (citing Brady v. United States, 397 U.S. 742, 757 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.")).  In a plea agreement, the criminal defendant and the government reach a "bargained-for understanding" benefitting both parties.  In doing so, "each side foregoes certain rights and assumes certain risks

in exchange for a degree of certainty as to the outcome of criminal matters.  One such risk is a favorable change in the law." Id. at 1145.  Allowing either party "to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining in the criminal justice system." Id. (citing Hahn, 359 F.3d at 1318).

In United States v. Frazier-LeFear, the Tenth Circuit appellate panel weighed in on the scope of the Circuit's "waiver precedent" and summarily disposed of a similar challenge, in which the defendant collaterally attacked her sentence based on the post-plea decision in Johnson (nullifying language similar to § 924(c)'s residual clause).  She argued that her waiver of the right to collaterally attack her sentence was unlawful because "she did not agree to be sentenced unconstitutionally," and that "the constitutional character of her claim should except it from the operation of her waiver." Frazier-LeFear, 665 F. App'x 727, 732 (10th Cir. 2016).  Citing Hahn, the Frazier-LeFear court rejected the defendant's attempt to "sever the 'otherwise unlawful' language of the fourth [Hahn] exception from its association with 'the waiver,' by asserting legal error involving other aspects of the proceedings (typically the determination of the sentence) as a basis for finding a miscarriage of justice." Id. at 729.  The court reiterated its earlier conclusion in Porter that "the fact that the alleged error arises out of a change in the law subsequent to the defendant's plea does not alter" the court's decisions separating the waiver from another part of the proceeding that may have resulted in legal error. Id. at 730, 732 ('The fact that [the defendant's] relinquishment of this right results in the lost opportunity to raise a constitutional challenge under Johnson reflects the natural operation, not the invalidity, of the waiver.").  The constitutional nature of the challenge did not change the court's analysis. Id. at 730–31 ("[O]ur

cases do not reflect the recognition of any special exception for errors of constitutional dimension.").

One could argue that the decisions in <u>Porter</u> and <u>Frazier-LeFear</u> are inapposite because Mr. Sandoval-Flores challenges his conviction, not his sentence.  See <u>Porter</u>, 405 F.3d at 1144 (challenging sentencing court's application of mandatory sentencing guidelines, and arguing that, in wake of intervening U.S. Supreme Court decision making guidelines advisory, the sentence was unlawful); <u>Frazier-LeFear</u>, 665 F. App'x 727 (10th 2016) (challenging sentencing court's application of career-offender sentence enhancement that the Supreme Court later invalidated as unconstitutionally vague).  And it is true that the Tenth Circuit has not yet addressed the "otherwise unlawful" waiver issue for post-<u>Davis</u> collateral attacks on § 924(c) convictions (although a recent appeal in <u>Chatwin v. United States</u> raises that and similar issues[2]).  But other circuit courts have done so and found, for reasons similar to those cited in <u>Porter</u> and other Tenth Circuit waiver cases, that enforcing a waiver of the right to attack a § 924(c) conviction under the post-plea decision in <u>Davis</u> would not be a miscarriage of justice.  E.g., <u>King v. United States</u>, 41 F.4th 1363, 1365 (11th Cir. 2022); <u>United States v. Caldwell</u>, 38 F.4th 1161, 1162 (5th Cir. 2022); <u>Portis v. United States</u>, 33 F.4th 331, 334–37 (6th Cir. 2022); <u>United States v. Goodall</u>, 21

---

[2] The Tenth Circuit is currently considering the appeal of <u>Chatwin v. United States</u>, No. 2:16-cv-00932-RJS, 2020 WL 7212148 (D. Utah Dec. 7, 2020), in which the trial court, applying <u>Hahn</u> and <u>Frazier-LeFear</u>, enforced a waiver of the right to collaterally attack § 924(c) conviction and sentence.  Mr. Chatwin appealed on numerous grounds, including the point that enforcing a waiver of the right to challenge an illegal conviction would seriously affect the fairness, integrity or public reputation of judicial proceedings.  The Tenth Circuit heard argument at the end of September 2022, but has yet to issue a decision.  See <u>United States v. Chatwin</u>, Case No. 21-4003 (10th Cir.).  Ultimately the <u>Chatwin</u> appellate panel's anticipated decision may not address the issue pending here, because other threshold issues, such as scope of the defendant's waiver, could dispose of that case without the need to reach the waiver issue.  (See Nov. 1, 2021 Opening Brief in <u>United States v. Chatwin</u>, No. 21-4003 (10th Cir.).)  But the Tenth Circuit could reach the question of whether a post-<u>Davis</u> challenge to a § 924(c) conviction falls within the miscarriage of justice exception.

F.4th 555, 563–64 (9th Cir. 2021); Oliver v. United States, 951 F.3d 841, 846–48 (7th Cir.

2020); United States v. Hanson, No. 99-CR-170-TCK, 2022 WL 860189, at *1, *2 n.1 (N.D.

Okla. Mar. 22, 2022).[3]

Many of those post-Davis decisions in other circuits echo the concerns the Tenth Circuit

articulated in Porter and Frazier-LeFear, in which the appellate court emphasized the importance

of plea bargaining to the criminal justice system and expressed concern that failure to enforce

waivers would undermine that process and the certainty that comes with it.  In Portis, the Sixth

Circuit followed this line of reasoning.  Describing the enforcement of such waivers as

"mainstream," the court remarked that allowing a defendant to obtain relief from a waiver "due

to later interpretations of a criminal statute, later constitutional rulings, or later congressional

changes to criminal laws or sentencing … would eliminate a bargaining tool to convince the

government to drop pending charges against a defendant." Portis 33 F.4th at 335–36.  The

Seventh Circuit reached a similar result in Oliver, in which it observed that "one major purpose

of an express waiver is to account in advance for unpredicted future developments in the law,"

and the bargain allocates "risk of the unknown for both sides." Oliver, 951 F.3d at 845.  The

---

[3] But see United States v. Sweeney, 833 F. App'x 395, 396–97 (4th Cir. 2021) (declining to
enforce appeal waiver on ground that defendant was actually innocent under Davis); Scalisi v.
United States, No. 16-CV-3233, 2022 WL 4058946, at *2–*3 (E.D.N.Y. Sep. 2, 2022) (noting
lack of Second Circuit decision, citing split within that circuit, and agreeing with decisions
declining to enforce a waiver in light of Davis); United States v. Lujan, No. CR 12-0268 JB,
2022 WL 326408, at *14 (D.N.M. Feb. 3, 2022) (holding waiver unenforceable because
"[c]onvicting someone for something that the law does not make criminal 'inherently results in a
complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral
relief.") (quoting United States v. Davis, 417 U.S. 333, 346 (1974)); Hernandez v. United States,
No. 14-CR-0264(JS), 2021 WL 3426110, at *3 (E.D.N.Y. Aug. 5, 2021) (declining to enforce
waiver, but noting disagreement among courts in the Second Circuit); United States v. Gregory,
No. 16-CV-394-JED-PJC, 2020 WL 5751617, at *4 (N.D. Okla. Sept. 25, 2020) (finding no
waiver because if Davis invalidated petitioner's 25-year sentence, it would be a miscarriage of
justice to require him to serve sentence exceeding statutory maximum).

Ninth Circuit in <u>Goodall</u> upheld a plea waiver in part because "[a]lthough there always remains a chance the law could change in the defendant's favor, the defendant knowingly and voluntarily assumes that risk because he receives a presumably favorable deal under existing law." <u>Goodall</u>, 21 F.4th at 563–64.  The "practical effect" of an "illegal sentence exception," it said, would "erode" the benefits of plea bargains "as defendants seek to have their cake and eat it too."  <u>Id.</u> at 564.  The court also voiced concern that such an exception "might undo nearly all appellate waivers, past and present, yielding 'perverse consequences.'"  <u>Id.</u> (quoting <u>Oliver</u>, 951 F.3d  at 846).

Mr. Sandoval-Flores, whom the government charged with nine counts, ultimately pleaded guilty to four counts and received a lesser sentence.  In exchange, he waived his right to collaterally attack his sentence and conviction and assumed the risk that a subsequent decision would undermine the original basis for his conviction.  Even though Mr. Sandoval-Flores's collateral attack raises a constitutional question, that does not undermine his waiver, because the Tenth Circuit does not recognize "any special exception for errors of constitutional dimension." <u>Frazier-LeFear</u>, 665 F. App'x at 731.  <u>See also, e.g.</u>, <u>Oliver</u>, 951 F.3d at 846, 848 (stating that "normal constitutional challenges to a statute of conviction fall comfortably within the permissible scope of valid waivers" in plea agreements, and enforcing waiver of collateral attack despite defendant's argument that he was "imprisoned under a charging theory that is now invalid"); <u>King</u>, 41 F.4th at 1365 ("a valid waiver of collateral attack foreclose[s] habeas relief based on a new retroactive constitutional rule" like the one announced in <u>Davis</u>).  In light of Tenth Circuit waiver precedent, and the weight of decisions in other circuits, the court is compelled to hold that Mr. Sandoval-Flores's waiver is not otherwise unlawful and is, accordingly, enforceable.

11

Despite that conclusion, the court is concerned by the lack of direct binding precedent and the pending appeal in <u>Chatwin</u>.  Accordingly, the court will address the United States' remaining grounds for dismissal.  Ultimately, however, as discussed below, the conclusion is the same: the court must deny his petition.

### 3.  <u>§ 2255(h) Gatekeeping Requirement</u>

Although the Tenth Circuit's COA gives Mr. Sandoval-Flores permission to file his second-or-successive § 2255 motion challenging his § 924(c) conviction under <u>Davis</u>, that only gets him through the first of two "gates" imposed by § 2255 law.  In the COA, the Tenth Circuit explained that Mr. Sandoval-Flores made a prima facie showing that his motion relies on the new retroactive rule of constitutional law announced in <u>Davis</u>.  That simply means Mr. Sandoval-Flores's motion warranted "'a fuller exploration by the district court.'"  <u>United States v. Copeland</u>, 921 F.3d 1233, 1239 (10th Cir. 2019) (quoting <u>United States v. Murphy</u>, 887 F.3d 1064, 1068 (10th Cir. 2018)).

The second gate requires that he convince this court that his petition "does, <u>in fact</u>, satisfy those requirements."  <u>Id.</u> at 1239 (quoting <u>Murphy</u>, 887 F.3d at 1068) (emphasis added).  To do that, he must show by a preponderance of evidence that the court needed to rely on the unconstitutional residual clause in § 924(c)(3)(B) to conclude that attempted murder satisfied the predicate "crime of violence."  <u>Id.</u> at 1242.  If, as the United States argues, the court could have relied on the valid elements clause at the time of sentencing to determine that attempted murder was a "crime of violence," he has not satisfied his burden.  <u>Id.</u> at 1243 (requiring a showing that the sentencing court's "'only option was the residual clause' … under the background law because it could not have relied on the enumerated or elements clause….") (quoting <u>United States v. Driscoll</u>, 892 F.3d 1127, 1135 (10th Cir. 2018)).  The crime of attempted murder under

§ 1114 qualifies as a predicate "crime of violence" under the elements clause if the crime "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).

To determine whether the court more likely than not had to rely on the residual clause, the court looks at (1) "the sentencing record to confirm that 'there is no mention whatsoever of the residual clause in the [pre-sentence report] or any of the other sentencing court pleadings or transcripts,'" and (2) "the 'relevant background legal environment' at the time of sentencing to determine whether the district would have needed to rely on the residual clause." Driscoll, 892 F.3d at 1132 (quoting Snyder, 871 F.3d at 1130).  "[T]he relevant background legal environment is … a 'snapshot' of what the controlling law was at the time of sentencing," and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions." Snyder, 871 F.3d at 1129.  Relevant case law includes cases "(1) holding that particular offenses qualify as violent felonies under specific … clauses and (2) instructing how to determine whether an offense qualifies." Copeland, 921 F.3d at 1243 (citing Snyder, 871 F.3d at 1129–30).

The parties agree the sentencing record does not mention the residual clause.  That leaves the "relevant background legal environment," as it existed in 2001 when the court sentenced Mr. Sandoval-Flores.  "When background law foreclosing the enumerated or elements clause is coupled with a silent or ambiguous record, the movant 'has adequately shown it is more likely than not that the sentencing court relied on the residual clause to [sentence him for violation of § 924(c)]." Id. (quoting Driscoll, 892 F.3d at 1135).

Here, the framework within which the court must analyze the issue is of particular importance.  If, as the Government urges, the court only needed to look at the facts of Mr.

Sandoval-Flores's crime of attempted murder, Mr. Sandoval-Flores would not be able to satisfy his burden under § 2255(h).  In his plea agreement, Mr. Sandoval-Flores admitted he intended to kill the law enforcement officers, that he shot at them, and that Officer Benzon was struck in the head and chest with bullets but survived due to protective equipment.  Under those facts, the attempted murder unquestionably was a crime of violence because he used physical force against the officers.

But Mr. Sandoval-Flores asserts that the background legal environment in 2001 required the court to apply the "categorical approach," a purely legal analysis that forecloses reliance on the facts of his crime.  Under that approach, the court looks only at the fact of conviction and the statutory definition—that is, the elements—of the predicate offense.  Taylor v. United States, 495 U.S. 575, 600, 602 (1990).  "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  United States v. Taylor, 142 S. Ct. 2015, 2020 (2022).  If the predicate offense can be committed without the use, attempted use, or threatened use of physical force, the offense does not qualify as a crime of violence under the elements clause.

In his categorical approach analysis, Mr. Sandoval-Flores contends that attempted murder is not a "crime of violence" under the elements clause because an attempt to murder someone can be accomplished without the use of force (he supports that with citation to murder-for-hire cases).  In other words, he claims the court's only avenue for conviction in 2001 was the unconstitutional residual clause, and, consequently, he has satisfied the gatekeeping requirement

### a.  Categorical Approach

Tenth Circuit and Supreme Court case law at the time of the 2001 sentencing does not

clearly show that the relevant background legal environment required use of the categorical approach for analysis under § 924(c).  But Mr. Sandoval-Flores need only show it is more likely than not that controlling law required the court to apply the categorical approach to determine whether attempted murder is a crime of violence.  For the reasons set forth below, he has satisfied his burden.

The categorical approach existed as early as 1990, when the United States Supreme Court decided Taylor v. United States, 495 U.S. 575 (1990).  There, the Court held that when a sentencing court had to determine whether the predicate offense was a "violent felony" under the elements clause of § 924(e) (the Armed Career Criminal Act (ACCA)), it had to use the categorical approach, looking "only to the statutory definitions of the prior offenses."  Id. at 600 (applying categorical approach to determine whether the ACCA enhanced the defendant's sentence for violation of § 922(g) (unlawful possession of a firearm)).  And indeed, many years before this court sentenced Mr. Sandoval-Flores, the Tenth Circuit, following Taylor's lead, began using the categorical approach in cases involving the ACCA and the Immigration and Nationality Act.  See Descamps v. United States, 570 U.S. 254, 260–64 (2013) (recognizing that in 1990 Taylor put the categorical and modified categorical approaches into play for ACCA cases); Olivas-Melendez v. Wilkinson, 845 F. App'x 721, 724 (10th Cir. 2021) (tracing "modern categorical approach jurisprudence" to Taylor and Descamps in the ACCA context); United States v. Haslip, 160 F.3d 649, 656 (10th Cir. 1998) (using categorical approach in ACCA case); United States v. Romero, 122 F.3d 1334, 1341 (10th Cir. 1997) (same); United States v. McMahon, 91 F.3d 1394, 1398 (10th Cir. 1996) (same); United States v. Spring, 80 F.3d 1450, 1461 (10th Cir. 1996) (same); United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993) (using categorical approach in deportation proceeding under the Immigration and Nationality

15

Act); United States v. Lujan, 9 F.3d 890, 891–92 (10th Cir. 1993) (ACCA); United States King,

979 F.2d 801, 802 (10th Cir. 1992) (same).  But the vast majority of those cases did not concern

§ 924(c).

Mr. Sandoval-Flores points to United States v. Brown, 200 F.3d 700 (10th Cir. 1999),[4] in

which the Tenth Circuit applied the same categorical approach it used in § 924(e) cases.  But the

Brown court did not expressly state that the approach under ACCA also applies to § 924(c)

cases.  But see United States v. Fell, 511 F.3d 1035, 1040 (10th Cir. 2007) (the court in Brown

"arguably" looked "only to the elements of the underlying substantive crime").  Moreover,

although the court looked at the elements of the underlying substantive offense (carjacking), it

held that the conspiracy to accomplish the federal carjacking crime fell within the residual clause

of § 924(c).  Brown, 200 F.3d at 706.

Taken alone, the single case of Brown and its underlying assumption that the categorical

approach applies to § 924(c) does not plainly represent a "snapshot" of "controlling law."  But

the leap from ACCA to § 924(c) is logical.  See Davis, 139 S. Ct. at 2326–27 n.4 ("For years,

almost everyone understood § 924(c)(3)(B) to require exactly the same categorical approach that

this Court found problematic in the residual clauses of the ACCA and [18 U.S.C.] § 16.") (citing

cases dated as early as 1994, but no pre-2001 cases in the Tenth Circuit).  Generously construing

the precedent, the court finds Mr. Sandoval-Flores's reliance on Brown, coupled with the pre-

---

[4] In addition to Brown, Mr. Sandoval-Flores relies on the unpublished Tenth Circuit decision in
Sutherland v. Flemming, 229 F.3d 1164, at *2 (10th Cir. 2000) (table decision), which in turn
cites United States v. Reyes-Castro, 13 F.3d 377 (10th Cir. 1993).  Neither Sutherland nor
Reyes-Castro applied the categorical approach in a § 924(c) case.  See Sutherland, 229 F.3d at *2
(addressing whether the Bureau of Prisons properly categorized the prisoner's previous crime as
a "crime of violence" for purposes of BOP's obligation to notify local law enforcement before
releasing the prisoner into the community); Reyes-Castro, 13 F.3d at 379 (applying categorical
approach in Immigration and Nationality Act case).

2001 <u>Taylor</u> line of cases, satisfies his burden to show that the court more likely than not would have applied the categorical approach.

But under § 2255(h), he must also show that under the categorical approach, the court more likely than not would have found that attempted murder was not a crime of violence under the elements clause at the time of sentencing. He has not done so.

### b. Attempted Murder Under the Categorical Approach in 2001

Mr. Sandoval-Flores ultimately asserts that his conviction and sentence under § 924(c) is invalid and must be vacated. To be guilty under that provision, he must have used or carried a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A).

The predicate "crime of violence" in Mr. Sandoval-Flores's case was attempted murder in violation of 18 U.S.C. § 1114(a)(3). That provision makes it a crime to kill or attempt to kill "any officer or employee of the United States" engaged in "the performance of official duties, or any person assisting such an officer or employee." 18 U.S.C. § 1114(a). Additionally, because § 1114 does not specify the elements of "attempt to kill," the court looks to the common law elements for attempt, which require proof that the defendant took a substantial step towards the crime and had a specific intent to kill. <u>Braxton v. United States</u>, 500 U.S. 344, 349–50, 350 n.* (1991).

Mr. Sandoval-Flores argues that, under pre-sentencing law, the relevant legal background environment shows that attempted murder is not a crime of violence under § 924(c) because neither the "substantial step" element nor the "specific intent to kill" element requires the use, attempted use, or threatened use of force. He does not cite to any case holding that attempted murder is a crime of violence under the elements clause. Instead, he cites a post-sentencing Tenth Circuit case and a 1985 Second Circuit decision to show that a substantial step to commit

17

attempted murder does not require the use, attempted use, or threatened use of force.  See United States v. Washington, 653 F.3d 1251, 1266 (10th Cir. 2011) ("traveling to 'a city in which he had no apparent business beyond the planned hit' with 'the person who had facilitated the murder-for-hire agreement' is a substantial step."); United States v. Martinez, 775 F.2d 31, 35 (2d Cir. 1985) (holding that soliciting a murder and providing a down-payment is a substantial step).  Neither case provides a snapshot of controlling law that existed at the time of sentencing.

As for his claim that the "specific intent to kill" element does not require the use, attempted use, or threatened use of physical force, he unconvincingly asserts the Tenth Circuit's 1992 decision in United States v. King, 979 F.2d 801 (10th Cir. 1992), settles the issue.  King is distinguishable because the Tenth Circuit analyzed conspiracy to commit a violent crime, not attempt to commit a violent crime.  See id. at 803.  See also United States v. Hill, 35 F.4th 366, 395 (5th Cir. 2022) ("[A]ttempt is fundamentally different from conspiracy.").

In short, none of Mr. Sandoval-Flores's cases establish that law at the time of sentencing required the court to rely on the residual clause.  Accordingly, he has not satisfied his burden under § 2255(h).

4. **Harmless Error**

Even if Mr. Sandoval-Flores had satisfied the gatekeeping requirements, the court may only grant habeas relief if reliance on the residual clause "had substantial and injurious effect or influence in determining his sentence."[5]  Copeland, 921 F.3d at 1252 (internal citations and quotation marks omitted).  To resolve the issue, the court engages in a harmless error analysis by applying the categorical approach[6] and asking whether the crime of attempted murder under

---

[5] At this stage, the Government bears the burden of proof.  Copeland, 921 F.3d at 1252.
[6] The court is actually using the "modified categorical approach," which applies in cases where the statute provides alternative elements—i.e., is "divisible."  Descamps, 570 U.S. at 261–62.  A

§ 1114(a)(3) has as an element the use, attempted use, or threatened use of physical force.

United States v. Muskett, 970 F.3d 1233, 1238 n.6 (10th Cir. 2020) (if, as a "matter of historical fact" the court relied on the residual clause at time of sentencing, subsequent harmless analysis asks whether the predicate crime "separately qualifies" as a crime of violence under the elements clause).  Because the court finds that a "substantial step" toward murder does require the attempted use of physical force, any sentencing error was harmless and the court must deny the request for habeas relief.  United States v. Copeland, 921 F.3d 1233, 1252 (10th Cir. 2019).

To begin, it is axiomatic that to commit murder, a person must use physical force.  It follows that an attempt to commit murder requires an attempt to use physical force.  The Tenth Circuit applied similar logic in an unpublished decision addressing whether attempted bank robbery was a crime of violence.  The court noted that "'when a completed crime has as an element the actual use of physical force, it stands to reason that any attempt to commit that completed crime necessarily has as an element the attempted use of such physical force—thus satisfying the elements clause.'" United States v. Rayford, 840 F. App'x 393, 394 (10th Cir. Mar. 22, 2021) (citing United States v. Neely, 763 F. App'x 770, 780 (10th Cir. 2019), for "persuasive value").

---

statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes." Mathis v. United States, 579 U.S. 500, 505 (2016).  The statute here—18 U.S.C. § 1114—is divisible, for a defendant may violate the statute in multiple ways (that is, he could kill an officer through murder or manslaughter, or he could attempt to kill the officer).  In re Amawi, 780 F. App'x 301, 305 (6th Cir. 2019).  The modified approach simply allows the court to look at extra-statutory materials such as the indictment and the plea agreement to "assess whether the plea was to the version of the crime" of attempted murder. Descamps, 570 U.S. at 262–63.  The approach is not an exception, but rather a tool.  Id. at 263.  After consulting the case record to determine the elements of the predicate crime, the court "once against close[s] [its] eyes to the actual facts underlying the defendant's conviction and appl[ies] the categorical approach." United States v. Kendall, 876 F.3d 1264, 1268–69 (10th Cir. 2017).

Although <u>Rayford</u> is not binding precedent and did not analyze the predicate crime of attempted murder, its logic is sound.  Indeed, other circuits have applied the same reasoning to conclude that attempted murder is categorically a crime of violence.  <u>See, e.g.</u>, <u>United States v. Pastore</u>, 36 F.4th 423, 429–30 (2d Cir. 2022) ("[B]ecause second degree murder under New York law is a crime [requiring the use of force], there can be no doubt that attempt to commit second degree murder under New York law is itself categorically a crime of violence"); <u>Alvarado-Linares v. United States</u>, 44 F.4th 1334, 1347 (11th Cir. 2022) (holding that VICAR attempted murder is a crime of violence because when "the completed crime of murder has as an element the use of force, the *attempt* to commit murder has as an element the attempted use of force.") (emphasis in original); <u>United States v. Smith</u>, 957 F.3d 590, 596 (5th Cir. 2020) (holding that attempted murder under § 1114(3) is a crime of violence, "[e]ven if [defendant's] substantial step was a nonviolent act to cause another's death"); <u>United States v. Baez-Martinez</u>, 950 F.3d 119, 132 (1st Cir. 2020) ("Attempted murder, of course, is separated from murder in that the victim did <u>not</u> die.  …. [I]f murder requires violent force because death results, then attempted murder does, too, because the defendant attempted to reach that result."); <u>United States v. Studhorse</u>, 883 F.3d 1198, 1203–05 (9th Cir. 2018) (attempted first degree murder, which has "specific intent" and "substantial step" elements, is crime of violence); <u>Hill v. United States</u>, 877 F.3d 717, 719 (7th Cir. 2017) (holding that attempted murder satisfied the elements clause, particularly "[g]iven [the clause's] specification that an element of attempted force operates the same as an element of completed force, and the rule that conviction of attempt requires proof of intent to commit all elements of the completed crime").

Mr. Sandoval-Flores claims that the recent U.S. Supreme Court decision in <u>United States v. Taylor</u>, 142 S. Ct. 2015 (2022) ("<u>Taylor II</u>"), rejected this analytical approach.  In <u>Taylor II</u>,

which held that attempted Hobbs Act robbery is not a crime of violence, the Court, in dicta, disapproved of one of the government's theories related to attempt:

> The government submits that the elements clause encompasses not only any offense that qualifies as a "crime of violence" but also any attempt to commit such a crime. And, the government reasons, because completed Hobbs Act robbery qualifies as a crime of violence, it follows that attempted Hobbs Act robbery does too. …. The government's syllogism rests on a false premise. The elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one. It asks whether the defendant *did* commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force.

Taylor II, 142 S. Ct. at 2021–22 (emphasis in original).

But the Government here does not take the broad position that an attempt to commit a crime of violence means an attempt to commit that crime is a "crime of violence" even if the attempt crime can be committed without the use, attempted use, or threatened use of force. The government's position is narrower, for it relies on the singular nature of murder, which always requires the use of force. The cases cited above reinforce that position, as does the Fourth Circuit decision in United States v. Taylor, 979 F.3d 203 (4th Cir. 2020) ("Taylor I"), which Taylor II affirmed.

In Taylor I, the Fourth Circuit articulated an example of why the government's position here falls outside the "syllogism" the Taylor II Court rejected. As the court pushed back against the government's resistance to a holding that attempted Hobbs Act robbery is not categorically a crime of violence, it addressed concern that all federal attempt crimes would fall outside the elements clause:

> [T]he Government protests that application of the categorical approach here would, by extension, "leave[] *all* federal attempt crimes," even attempted murder, "outside § 924(c)(3)(A)." Not so. To be sure, where a crime of violence may be committed without the use or attempted use of physical force, an attempt to commit that crime falls outside the purview of the [elements] clause. But where a crime of violence *requires* the use of physical force — as is usually the case — the categorical approach produces the opposite outcome: because the substantive

> crime of violence invariably involves the use of force, the corresponding attempt to commit that crime necessarily involves the attempted use of force.  Such an attempt constitutes a "crime of violence" within the meaning of the [elements] clause in § 924(c)(3).

Taylor I, 979 F.3d at 209 (emphasis in original; internal citation omitted).

Mr. Sandoval-Flores's murder-for-hire cases (none of which addressed the issue before this court) do not change the court's conclusion.  When a defendant takes a substantial step to commit a crime requiring use of force (i.e., murder) and intends to commit that crime, liability for attempt to use that force attaches, even if the substantial step did not involve an act of force. See, e.g., Smith, 957 F.3d at 596 (attempted murder is crime of violence even if "substantial step was a nonviolent act to cause another's death"); United States v. Tabb, 949 F.3d 81, 86 (2d Cir. 2020) (specific intent to commit second-degree assault plus substantial step in any form categorically involved the attempted use of physical force); Studhorse, 883 F.3d at 1204–06 (even a "slight, nonviolent act" "strongly corroborative of one person's intent to murder another person" is substantial step involving attempted use of force); United States v. Thomas, No. 2:21-cr-20078-JPM-1, 2022 WL 17091875, at *4 (W.D. Tenn. Nov. 21, 2022) ("Whether Defendant was convicted under a substantial step theory or under the theory that he acted with the intent to commit murder and believed that his conduct would lead to that result, attempted second-degree murder necessarily 'has as an element the use, attempted use, or threatened use of physical force against the person of another'").

Given the Tenth Circuit's persuasive analysis in Rayford and the slew of on-point cases in other jurisdictions supporting the Government's position, the court holds that under today's law, attempted murder in violation of § 1114 is categorically a crime of violence under the elements clause.  Accordingly, even if pre-sentencing law required the court to apply the residual clause, any resulting error was harmless and Mr. Sandoval-Flores is not entitled to relief.

**5.** <u>**Certificate of Appealability**</u>

In order to appeal this court's decision to the Tenth Circuit, Mr. Sandoval-Flores needs a certificate of appealability (COA), which requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B), (c)(2); Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). To make such a showing, he must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). The court finds that Mr. Sandoval-Flores's petition does not satisfy the standard, and, accordingly, declines to issue a COA.

## ORDER

For the foregoing reasons, Petitioner Julian Sandoval-Flores's Amended § 2255 Motion (ECF No. 9) is DENIED.

DATED this 16th day of December, 2022.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge